# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HEATHER D. BOLE,**

    **Plaintiff,**

    **v.**                                                                    Case No. 16-CV-1230

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Heather Bole seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Bole applied for supplemental security income, alleging she had been disabled since October 7, 2009 due to diabetes, a learning disability, seizures, and high blood pressure. (Tr. 258.) Bole's claims were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge on March 27, 2012. (Tr. 81.) On August 24, 2012, the ALJ issued an unfavorable decision (Tr. 40-54) and Bole requested Appeals Council review, which was denied (Tr. 20). Bole subsequently filed a civil action in the United States District Court for the Eastern District of Wisconsin and on November 9, 2015, I granted the parties' joint motion to remand Bole's case for further proceedings. (Tr. 953-54.)

The Appeals Council issued a remand order on January 14, 2016, which directed that Bole's newly filed SSI application be consolidated with the old, remanded case. (Tr. 962-64.) A new hearing was held on April 26, 2016. (Tr. 863.) Bole, represented by counsel, testified at this hearing, as did Leslie Goldsmith, a vocational expert. (*Id.*)

In a written decision issued June 2, 2016, the ALJ found Bole had the severe impairments of diabetes mellitus, left shoulder impairment, and bipolar disorder. (Tr. 835.) The ALJ further found that Bole did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (*Id.*) The ALJ found Bole had the residual functional capacity ("RFC") to perform light work with the following limitations: she can perform no more than five pounds lifting with her left hand; she is precluded from more than occasional climbing of ramps and stairs; she is precluded from any climbing of ropes, ladders or scaffolds; she is precluded from more than frequent reaching with her left (non-dominant) hand/arm; she is precluded from work exposing her to concentrated dust, fumes, smoke, chemicals or noxious gases; and she is precluded from work at unprotected heights, around dangerous machinery, or at temperature extremes. Bole was further limited to no more than frequent interaction with the general public and only occasional interaction with supervisors; she is limited to performing simple, routine tasks in a job requiring few, if any work place changes; she has limited reading and math abilities; and she is likely to be off task for about 5-10% of the workday in addition to regularly scheduled breaks from work.

Bole subsequently filed this action in federal court, without Appeals Council review. (Pl.'s Br. at 2, Docket # 15.)

# DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### *2. Application to this Case*

Bole alleges that the ALJ erred in four ways. First, she argues the ALJ failed to consider the opinion of her treating mental health nurse practitioner. Second, she argues the ALJ improperly assessed her RFC as to her mental impairments. Third, she argues the ALJ improperly assessed her RFC as to her physical impairments. Finally, Bole argues the ALJ erred in finding her allegations of disabling symptoms lacked credibility. I will address each argument in turn.

2.1 Consideration of Treating Mental Health Nurse Practitioner

Bole argues the ALJ erred by failing to address or analyze the opinion of her treating mental health nurse practitioner, Jillian Versweyveld. Bole began treating with Versweyveld in November 2015 and saw her six times between November 2015 and March 2016. (Tr. 1657, 1658, 1659, 1661, 1662, 1687.) On April 14, 2016, Versweyveld completed a Mental Impairments Questionnaire. (Tr. 1690-92.) Versweyveld opined that Bole had marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace; and four or more episodes of decompensation within a twelve month period, each of at least two weeks duration. (Tr. 1691.) Versweyveld opined Bole would be absent from work about four days per month due to her impairments or treatment. (Tr. 1692.)

The transcript indicates that Versweyveld's assessment was provided to the ALJ on May 18, 2016 (Tr. 1688), prior to issuing his June 2, 2016 decision. However, in his decision, the ALJ specifically stated that there was no new opinion evidence on remand other than a global assessment of functioning score assigned at a mental health evaluation in February 2013. (Tr. 842.) The Commissioner does not address Bole's argument as to the ALJ's failure to consider Versweyveld's assessment.

Although Versweyveld, as a nurse practitioner, was not considered an "acceptable medical source," SSR 06-3p, she was still considered an "other source" and should have been considered. *See* SSR 06-3p ("With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). Although the ALJ considered opinion evidence from sources, such as Dr. Kamal Muzaffar, who examined Bole on one occasion, Versweyveld's opinion is the only one in the record from a treating mental health provider who saw Bole on multiple occasions over a span of several months. Versweyveld's opinion, if credited, may support a finding of disability. For these reasons, the ALJ erred in failing to consider Versweyveld's opinion and it must be considered on remand.

2.2 RFC Assessment - Mental Impairments

Bole argues the ALJ's mental RFC assessment was not supported by substantial evidence. As to her mental limitations, the ALJ restricted Bole as follows: limited to no more than frequent interaction with the general public and only occasional interaction with supervisors; limited to performing simple, routine tasks in a job requiring few, if any work place changes; and has limited reading and math abilities.

RFC is the most the claimant can do in a work setting "despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01; *see also* 20 C.F.R. § 404.1545(a)(1); SSR 96–8p. The Administration

must consider all of the claimant's known, medically determinable impairments when assessing RFC. 20 C.F.R. § 404.1545(a)(2), (e).

As an initial matter, although not framed as a challenge to the ALJ's finding that Bole failed to meet Listing 12.04, Bole argues the ALJ erred in finding that she has only mild difficulties with regard to concentration, persistence, or pace (Tr. 836), especially given the fact in his previous decision, the ALJ found Bole had moderate difficulties in concentration, persistence, or pace (Tr. 47). (Pl.'s Br. at 13-15.) I agree the ALJ erred in this regard. Again, the ALJ failed to consider Versweyveld's opinion, who opined Bole had marked limitations in concentration, persistence, or pace. Further, the ALJ's reasoning for why he changed his assessment from moderate to mild is problematic. The ALJ explains that a 2013 psychological examination showed no attention problems and she was able to remember words and perform serial sevens. (Tr. 836.) The 2013 examination did not find no attention problems. Rather, the examiner stated that Bole's performance "was suggestive of potential attention problems; however, it was not possible to determine whether her potential attention problems are due to an underlying Attention Deficit Disorder." (Tr. 1673.)The ALJ also failed to acknowledge that during a more recent assessment (performed by Versweyveld), Bole was unable to perform the serial sevens. (Tr. 1663.) Given that State Agency consultant Dr. Howard Tin found Bole moderately limited as to concentration, persistence, or pace (Tr. 570); the fact the ALJ did not consider Versweyveld's opinion; and the fact the ALJ misstates the record, it is unclear why he now finds she only has mild limitations as to concentration, persistence, or pace. Thus, the ALJ should re-evaluate whether Bole meets a listing on remand, which, in turn, may affect his RFC assessment.

Bole also faults the ALJ's finding that plaintiff had moderate difficulties maintaining social functioning, yet rejected Dr. Tin's opinion that Bole should not perform work requiring interaction with the general public. (Pl.'s Br. at 18-19.) The ALJ rejected Dr. Tin's opinion, stating that because Dr. Tin only found only moderate (as opposed to marked) limitations in interaction with the general public, Dr. Tin's opinion that Bole can have no interaction with the public was "not consistent with the opinion that [Bole] has only moderate limitation." (Tr. 841.) Dr. Tin explained that Bole should be limited to work tasks that do not require interaction with the general public due to the fact that she yells at people when her blood sugar is low. (Tr. 584.) I agree with Bole that Dr. Tin's finding of moderate limitations in social functioning is not inherently inconsistent with his finding that Bole should not be required to interact with the general public. The record indicates that Bole engages in violent behavior when her blood sugar is low. (Tr. 552.) The ALJ explained that because Bole had improvement with her mental health medication, this supported a finding that she could frequently have interaction with the general public. (Tr. 840.) But Dr. Tin's finding was that Bole's blood sugar issues, not her mental health issues, supported his limitation. Given the record evidence and Dr. Tin's assessment, the ALJ should re-evaluate Bole's limitation to frequent interaction with the general public.

### 2.3   RFC Assessment - Physical Impairments

Bole also challenges the ALJ's RFC assessment as to her physical impairments. The ALJ limited Bole to light work with the following limitations: she can perform no more than five pounds lifting with her left hand; she is precluded from more than occasional climbing of ramps and stairs; she is precluded from any climbing of ropes, ladders or scaffolds; she is precluded from more than frequent reaching with her left (non-dominant) hand/arm; she is precluded from work exposing her

to concentrated dust, fumes, smoke, chemicals or noxious gases; and she is precluded from work at unprotected heights, around dangerous machinery, or at temperature extremes. The ALJ further found that Bole was likely to be off task for about 5-10% of the workday in addition to regularly scheduled breaks from work.

Bole argues that the ALJ improperly limited her to off task time of 5-10% to check her blood sugar throughout the day. Bole argues that she testified she checks her blood sugar 8-14 times per day and the ALJ did not ask what time those checks took place, nor did the ALJ consider if her other physical ailments (such as polyneuropathy and carpal tunnel syndrome) would make checking her blood take longer. (Pl.'s Br. at 19-20.) Bole testified as follows as to "what it takes" for her to measure her blood sugar: "I have to wash my hands properly, find a place that I can go to to [sic] check my blood sugar, take out my machine, take the strip out of the bottle, put it into the machine, poke my finger, squeeze the blood out, put it in, the strip, wait for the machine to calm down, and tell me what my sugar is." (Tr. 873.) She did not testify that she had particular difficulties accomplishing this due to her other physical ailments. However, given the fact this case is being remanded for other reasons, and given the fact it is unclear if Bole needs to test 8-14 times during work hours, the ALJ should re-examine this on remand.

Bole further challenges the ALJ's rejection of Dr. Muzaffar's opinion that Bole could stand and walk for one hour at a time and for two hours total during an eight-hour workday. (Tr. 812, 841.) Dr. Muzaffar stated that Bole's "ability to ambulate" supported his findings. (Tr. 812.) The ALJ rejected Dr. Muzaffar's opinion as to her ability to stand and walk, finding that his physical examination notes did not provide specific objective abnormality to support that part of the opinion. (Tr. 841.) I do not find the ALJ erred in this regard. Bole did not complain to Dr. Muzaffar of any

pain, numbness, tingling, or difficulties with ambulating (Tr. 808) and upon physical examination, Dr. Muzaffar noted that Bole was "able to get up from the interview chair to the exam table" and was "able to get up from the interview chair and ambulate the hallway" (Tr. 809).

Bole argues that her difficulty ambulating has to do with her fluctuating blood sugars. (Pl.'s Br. at 20.) Again, Bole did not complain to Dr. Muzaffar that she was having difficulty ambulating. Rather, Dr. Muzaffar noted that Bole "had additional complaint of pain discomfort associated with her upper extremities bilaterally. It appears this is secondary to diabetic neuropathy." (Tr. 810.) Thus, given the fact Dr. Muzaffar states that his limitations regarding standing and walking were do to her "ability to ambulate," and he had no evidence, whether objective from examination or subjective complaints from Bole, to support this conclusion, the ALJ did not err in rejecting this portion of Dr. Muzaffar's opinion.

Bole further argues the ALJ erred in failing to address her right shoulder impairment, her impairments from carpal tunnel syndrome, and her impairments from polyneuropathy in the RFC. (Pl.'s Br. at 21.) Bole argues the ALJ failed to adequately address Bole's difficulties reaching, handling, and fingering, bilaterally. (Pl.'s Br. at 24.) Bole had carpal tunnel surgery on her left hand. (Tr. 1562.) The ALJ did credit and include limitations for Bole's left hand, including limiting her to lifting no more than five pounds and no more than frequent reaching with her left hand. After testifying that she can lift no more than a water balloon with her left hand (Tr. 878), Bole testified that her "right hand is perfectly fine" (*id.*). The evidence in the record of numbness and tingling is generally associated with her left hand (Tr. 1491, 1512, 1517, 1526, 1555) and improved with her carpal tunnel surgery (Tr. 1684). However, as Dr. Muzaffar noted, Bole experienced numbness and tingling in both arms (Tr. 808) that he believed was secondary to diabetic neuropathy (Tr. 810) and

-9-

as the record supports Bole experienced right shoulder pain (Tr. 652, 725, 1506, 1515), the ALJ should take a closer look on remand as to lifting and/or reaching restrictions for Bole's right hand and any fingering limitations stemming from her diabetic neuropathy.

### 2.4 Credibility Assessment

Bole argues the ALJ erred in finding her statements of disabling symptoms not entirely credible. In evaluating credibility, the ALJ must comply with SSR 96-7p.[1] *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). SSR 96-7p requires consideration of: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual has received for the relief of pain or other symptoms; (6) measures, other than treatment, that the individual uses to relieve the pain or other symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms. Regarding the assessment of credibility, SSR 96–7p states that the reasons for the ALJ's credibility finding "must be grounded in the evidence and articulated in the determination or decision . . . .The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

---

[1] Since the ALJ's decision in this case, SSR 96-7p has been superseded by SSR 16-3p. Because the new regulation's purpose was not to clarify the law, but rather to wholly rescind the standard enunciated in 96-7p and there was no clear indication that the rule have retroactive effect, I will analyze the ALJ's decision based upon the standard used in his analysis. *See Pope v. Shalala*, 998 F.2d 473, 482-83 (7th Cir.1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir.1999) ("[A] rule changing the law is retroactively applied to events prior to its promulgation only if, at the very least, Congress expressly authorized retroactive rulemaking and the agency clearly intended that the rule have retroactive effect.").

The ALJ discounted Bole's statements regarding her symptoms because: (1) the record did not corroborate Bole's allegations of frequent emergency room visits, frequent episodes of low blood sugar resulting in seizures/falling or poor memory, nor the need to take breaks to test her blood sugar 14 times a day; (2) Bole's treatment was routine and/or conservative in nature; (3) Bole had gaps in treatment; (4) Bole failed to follow-up on recommended treatment; (5) Bole failed to stop smoking; (6) Bole did not complain of persistent pain until 2014, five years after her alleged onset date; (7) in November 2014 Bole began complaining of arm pain yet still had normal examinations and did not have frequent emergency room visits; and (8) her mental health symptoms were under control with medication and counseling. (Tr. 838-40.)

I agree that the ALJ erred in assessing Bole's credibility. The ALJ found that the record did not corroborate Bole's allegations of frequent emergency room visits related to her diabetes. (Tr. 838.) The ALJ found that the majority of Bole's emergency room treatment was in 2009 for her pregnancy and she had only one, isolated emergency room visit in November 2015 related to low blood sugar. This is simply inaccurate. Bole presented to the emergency room many times in 2010 with low blood sugar. (Tr. 437, 635, 640, 665, 673, 695, 703, 725, 742, 751, 758.) The ALJ also faulted Bole for pursuing "essentially routine and/or conservative" treatment for her diabetes. (Tr. 839.) It is unclear, however, what treatment he expected Bole to pursue. Diabetes is generally treated through diet and medication. Bole did attempt to use an insulin pump, but discontinued it because of an inability to maintain the insertion site. (Tr. 606.)

The ALJ found that Bole had a gap in treatment after September 2010 and in 2013. It appears that Bole moved to Illinois and moved back to Wisconsin in 2011 (Tr. 1279) and when she saw her diabetic endocrinologist in January 2011 in Illinois, her A1C was around five and her labs were fine

(Tr. 1280). She treated with a nurse practitioner in April 2011, at which time Bole stated she was checking her blood sugar 12-13 times per day and had multiple episodes of hypoglycemia. (Tr. 1280.) Her A1c was 7.8.[2] (Tr. 1200.) In February 2013, Bole had an initial consultation with Martin Sarkar, D.O., at which time she stated that her blood sugars were high and low all day and she checked her blood sugar over ten times daily due to fears of hypoglycemia. (Tr. 1198.) Thus, even during the time period when Bole treated less frequently for her diabetes, it does not appear that her blood sugar levels were under control and she was asymptomatic.

The ALJ noted that the record contained some evidence that Bole's limited medical care was partially attributable to a lack of money and health insurance rather than the absence of symptoms. (Tr. 840.) The ALJ then stated "[h]owever, on the other hand, at that same time, she admitted to having the means to obtain two packs of cigarettes per day to smoke." (*Id.*) The Seventh Circuit has rejected a similar ALJ finding as improper. *See Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) ("And he summarily dismissed Eskew's explanation for not taking prescribed medication simply by noting her ability to buy cigarettes during that time—even though the record contains no information about either the price of her medication or the cost of her cigarette habit.").

Bole also challenges the ALJ's finding that she failed to follow recommended treatment, specifically, her diet and the timing of her insulin injections. Although the record does contain evidence that Bole was non-complaint with her diet and insulin at times (Tr. 1136, 1291), the record also contains evidence that Bole was attempting to comply with her diet (Tr. 605, 606, 615, 1247,

---

[2]The A1C test result reflects average blood sugar level for the past two to three months. For most people who have previously diagnosed diabetes, an A1C level of 7 percent or less is a common treatment target. http://www.mayoclinic.com/health/a1c-test/MY00142 (last visited Mar. 12, 2018).

1251, 1508) and Dr. Muhammad Memon opined that her learning difficulties may be a factor for the non-compliance with her diet and insulin regimen (Tr. 549).

Bole further challenges the ALJ's finding that Bole's mental health treatment was not the type or frequency expected and the fact she improved with medication. The ALJ found that Bole declined treatment and medication and failed to show up for several appointments. (Tr. 840.) The ALJ failed to consider, however, the fact that the record noted that the "necessity to meet basic needs such as stable housing and transportation appears to have been a barrier to engaging in therapy at this time." (Tr. 1675.) Also, despite the fact Bole did show some improvement with medication, Versweyveld noted that Bole stated in March 2016 that her moods swings have still been a problem, though her anger was well managed. (Tr. 1687.) Versweyveld noted that Bole was "not lashing out like she did when I first met [her,] though she [was] still having difficulty with mood swings." (*Id.*) For these reasons, I find the ALJ erred in his credibility assessment and it must be reassessed on remand following the new regulation, SSR 16-3p.

## CONCLUSION

Bole challenges the ALJ's decision in four ways: (1) the ALJ failed to consider the opinion of her treating mental health nurse practitioner; (2) the ALJ improperly assessed her RFC as to her mental impairments; (3) the ALJ improperly assessed her RFC as to her physical impairments; and (4) the ALJ erred in finding her allegations of disabling symptoms lacked credibility. I agree the ALJ erred and must re-examine all of these issues on remand.

Although Bole requests that this Court award her benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there

are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of March, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge